# Lehigh Coal & Navigation Co., Appellant, *v.* Inter-County Street Railway.

[Marked to be reported.]

*Street railways—Consent of supervisors—Fraud—Bribery.*

Where the consent of a supervisor to the use of township roads by an electric railway company, was given in consideration of the promise of the railway company to provide employment for the supervisor and his son at an agreed price per day, it is a plain case of bribery, and the consent is invalid.

*Street railways—Municipal consent—Interference with charter rights.*

Where the charter of a street railway company authorizes the construction of a railway through several townships and boroughs, the consent of all the municipalities is a condition precedent to the right to begin the construction of the railway.

If one or more of the municipalities refuses its consent, the company cannot build a local road within the limits of the consenting municipality without a new charter and a new consent, as the consenting municipality may well object that its consent is being used for a purpose not contemplated when it was granted, and within neither its letter nor its spirit.

An injunction to restrain the construction of such local road, will not work a practical repeal of the charter of the company, but will merely restrain the action of the company within the limits authorized by its charter.

*Street railways—Parties—Status of corporation which has assumed the repair of roads—Act of June 12, 1893.*

A corporation which has assumed the duty of making and repairing highways, under the provisions of the act of June 12, 1893, P. L. 451, has a standing in a court of equity to object to the construction of an electric railway upon one of the highways it is bound to keep in repair.

Argued Feb. 20, 1895. Appeal, No. 220, Jan. T., 1895, by plaintiff, from decree of C. P. Schuylkill Co., Sept. T., 1894, No. 1, dismissing bill in equity. Before GREEN, WILLIAMS, McCOLLUM, DEAN and FELL, JJ. Reversed.

Bill in equity for an injunction to restrain the construction of an electric railway on a public road, leading from the borough of Tamaqua to the borough of Lansford.

The bill alleged that in February, 1891, plaintiff entered into a contract with Rahn township, provided for by the act of June 12, 1893, entitled "an act enabling tax payers of town-

ships and road districts, to contract for making, at their own expense the roads, and paying the salaries of township or road district officers, and thereby preventing the levying and collection of road tax therein," whereby the complainant was bound to make and repair the roads of said township and save the township harmless from all damages from non- or defective performance of the contract, and that to secure the performance of the contract, the plaintiff had given bond with surety in the sum of $8,000.

That the Tamaqua and Lansford Street Railway Company, incorporated Nov. 2, 1894, under the act of May 14, 1889, to construct and operate a street railway in Tamaqua through Rahn township to Lansford, had applied to and obtained from the local authorities of Rahn township, on May 9, 1894, their consent to the construction and operation, by the Tamaqua and Lansford Street Railway Company of its street railway, on the public road in said township, leading from Tamaqua to Lansford ; that in pursuance of its charter rights and said consent, it had proceeded to construct its street railway on said public road, and, at the time of filing the bill, had graded about two miles of its passenger railway thereon.

That the Inter-County Street Railway Company, incorporated April 27, 1894, under the provisions of the act of May 14, 1889, for the purpose of building and operating a street railway between Tamaqua and Lansford, through Rahn township, had, prior to May 9, 1894, applied to Morris Coll, supervisor of Rahn township, for his consent to the building and operation of a street railway by the Inter-County Company on the same public road in said township, leading from Tamaqua to Lansford ; that Coll, at first refusing, subsequently agreed to give said consent, in consideration of a contract from the Inter-County Company to employ him, said Coll, and his son, as long as he, the said Coll, should live. That a contract in writing was entered into by said Inter-County Company with said Coll, stipulating to give him and his son such employment, and that thereupon the written consent of said Coll, as supervisor of said township, was delivered to said Inter-County Company, on May 9, 1894, but after the execution and delivery of the consent of the local authorities of Rahn township, to the building and operating by the Tamaqua and Lansford Company of

its road on the same highway. That the consent obtained by the Inter-County Company was without the knowledge or approval of the township auditors and given without consultation with the duly appointed council of the township. That the consent given to the Tamaqua and Lansford Company was obtained at a meeting of the supervisor and a majority of the auditors of the township, at which the counsel of the township was present, and after Coll, the supervisor, had explained the corrupt agreement he proposed to carry out with the Inter-County Company, and had been informed that such a corrupt agreement would not be binding on the township.

That on July 30, 1894, the Inter-County Company had begun to dig up said public road for the purpose of constructing a street railway thereon, thereby making the road inconvenient and unsafe for travel, and requiring the outlay, by the complainant, of a large sum of money to repair said road, under its contract with the township, and that neither the Inter-County Co. nor its stockholders were able to respond in damages.

That the complainant had called on Coll, the supervisor, to protect the township from such illegal intrusion of the Inter-County Company on said highway, but that Coll refused to act, unless the complainant would agree to do for him and his son, what the Inter-County Co. had agreed to do.

The complainant, denying the right of the defendant to build a street railway on said public road and alleging the unwillingness of Coll the supervisor, from corrupt motives, to protect the township, asked equitable relief, viz: for an injunction; preliminary until hearing, and perpetual thereafter, restraining the Inter-County Company from further interfering with that public road, a mandatory injunction requiring the Inter-County Co. to put the public road in the same condition it was in when the Inter-County Company began to construct its street railway thereon, and other proper relief.

To the bill of complaint was attached, as an exhibit, a copy of the consent of the local authorities of Rahn township to the Tamaqua and Lansford Company.

With the bill, was presented and filed the petition of the auditors and clerk of Rahn township, setting out, that they had heard read the bill of complaint and, from their own knowledge or trustworthy information, believed the averments thereof,

that they joined in the prayers for relief and prayed that the township of Rahn might be made a party complainant, and the suit prosecuted in its behalf.

The answer of the defendant asserted that, if complainant has made a contract with Rahn township under the provisions of the act of June 12, 1893, the complainant is not bound thereby, because the act referred to is unconstitutional.

The answer alleged that the consent given by the supervisors and auditors to the Tamaqua and Lansford Street Railway Company, May 9, 1894, was void as against the rights of the Inter-County Company, because subsequent in time to a right of way over the public road in question, given by Coll, supervisor of said township, to said Inter-County Company.

The answer admitted the commencement by the Tamaqua and Lansford Company of the construction of its street railway on the public road in Rahn township as alleged in the bill.

The answer admitted the agreement of the Inter-County Company with Coll, supervisor, to give him and his son employment if he would grant that company the right of way over the public road in question, but alleged, that such employment was only to be given in the event of Coll or his son being discharged from the employ of the complainant because of signing such right of way, and the answer further alleged that the agreement of the Inter-County Company to employ Coll and his son was asked for and given after Coll had given the right of way for the Inter-County Company. The answer denied that any corrupt or illegal means were used by the Inter-County Company, in procuring the right of way in question, from Coll, supervisor. The answer admitted that the consent from Coll, supervisor, to the Inter-County Company was obtained without the knowledge or consent of the township auditors and without consultation with the duly appointed counsel of the township, alleging that neither was necessary in granting the consent referred to.

The answer alleged that the consent of the local authorities, executed and delivered to the Tamaqua and Lansford Co., on the 9th of May, 1894, was executed and delivered by said Coll, supervisor of Rahn township, under duress, upon misrepresentations, by coercion, and under undue influence, brought to bear upon him by the persons present at the time, and that he was compelled and fraudulently advised to sign said paper.

The court granted a preliminary injunction which it subsequently dissolved. The parties agreed that depositions taken and read on hearing of rule to dissolve should be taken and used as the testimony to be submitted on final hearing. The depositions were read at final hearing, and, after argument, the court in an opinion by WEIDMAN, J., dismissed the bill on the ground that the decree prayed for would practically be a repeal of the defendant's charter, which could only be done by the legislature, or by a judicial forfeiture at the intervention of the attorney general.

*Errors assigned*, among others were, (1) in dissolving the preliminary injunction; (4) in holding that to grant the injunction prayed for would practically be a repeal of defendant's charter; (5) in refusing the restraining injunction prayed for; (6) in refusing the mandatory injunction prayed for; (7) in dismissing the bill.

*Fergus G. Farquhar* and *John W. Ryan, George M. Roads* with them, for appellant.—If the complainant had a right to invoke the equitable remedy provided by the act of June 19, 1871, P. L. 1361, to obtain a restraining injunction, to prevent a trespass and nuisance on the public road in Rahn township, a mandatory injunction upon the trespasser to repair and abate the nuisance, or any other equitable relief proper on the facts alleged and proven, it was error to dismiss the bill: Westhæffer v. Ry., 35 W. N. C. 33.

Abutting owners of real estate suffer a special and distinct injury from that of the general public when the public highway in front of their property is made unsafe and inconvenient by a trespass of a continuing character: Ry. Co.'s App., 115 Pa. 514; Sterling's App., 111 Pa. 35; Edgewood R. R. Co.'s App., 79 Pa. 257.

The complainant in asking a court of equity to prevent the unlawful occupancy of the public road and the creation of a nuisance upon it, is only doing what the township or its executive officers could and should have done, in the performance of their duty as to the public road: Commissioners v. Long, 1 Parsons Eq. C. 143; 1 White and Tudor Leading Cases in Equity, 629; Bispham Principles of Eq., sec. 229.

The court below in a proceeding in equity, between the Tamaqua and Lansford Street Railway Co. and the Inter-County St. Ry. Co., rival companies, each asserting the right to build a passenger railway on the road in question, did not hesitate to examine, inquire and ascertain which, if either, of these complainants had the right or franchise it asserted. Finding that the Inter-County Co. had no such franchise and that the Tamaqua and Lansford had, it ordered a restraining injunction in the very words of the one prayed for in this case. This it was bound to do, in this case and that, and could do without, practically or otherwise, repealing respondent's charter: West. Pa. R. R. Co.'s App., 104 Pa. 399; Edgewood's R. R. Co.'s App., 79 Pa. 257; McCandless' App., 70 Pa. 210; Sterling's App., 11 Pa. 35.

*J. O. Ulrich* and *James Ryon*, *L. W. Barringer* with them, for appellee.—The relation between the complainants and the township of Rahn, by virtue of complainant's contract to repair the public roads, is contractual; and hence the complainants are liable only by the terms of their contract and to no one except the township: Jones on Neg. of Municipal Corporations, p. 334; Buffalo v. Hollaway, 7 N. Y. 493; Sherman & Redfield on Neg., sec. 81, p. 105; Robbins v. Chicago, 4 Wall. 657; Newlin Twp. v. Davis, 77 Pa. 317; Twp. v. Scholly, 84 Pa. 141.

The use of the public highway for purposes of street railways is not the imposition of an additional servitude, and does not entitle the abutting landowner along the highway to compensation for such use: Rafferty v. Central Traction Co., 147 Pa. 590; Lockhart v. Craig St. Ry. Co., 139 Pa. 419.

The court below was right in holding that to grant the prayer of the bill would be equivalent to repealing the appellee's charter: Sparhawk v. Union Pass. Ry., 54 Pa. 401; R. R. v. Stemp, 8 G. & J. 479; R. R. v. Brudder, 20 N. J. Eq. 530; Canal Co. v. Graham, 63 Pa. 290; Rafferty v. Cent. Traction Co., 147 Pa. 579; Larimer Ry. v. Ry., 137 Pa. 547; Rhodes v. Dunbar, 57 Pa. 274.

A court of equity will not enjoin the obstruction of a public street at the suit of a private citizen who shows no special damage: Cox's App., 10 W. N. C. 552; Cox's App., 11 W. N. C.

571; Union St. Ry. v. North Side Ele. Ry., 154 Pa. 442; West
Penna. R. R. Co.'s App., 104 Pa. 406; Rafferty v. Cent. Trac-
tion Co., 147 Pa. 579; Swan v. Scott, 11 S. & R. 164; Johnson
v. Hulings, 103 Pa. 504.

The consent of the supervisor to the appellee affords ample
protection to the township against any possible loss or damage
in the future; and it is an ample consideration to the township
for the consent to use the public roads by a public improvement
highly beneficial to the public. And as the appellant could
make out its case without the aid of the alleged illegal trans-
action, even the township of Rahn could not set that up as a
defense: Wright v. Pipe Line Co., 101 Pa. 204.

When public rights are to be subserved, public officers must
act, and in no case can a private party intervene unless he can
show a specific legal right, as well as special damages to him-
self, independent of that which he holds with the public at
large: Heffner v. Com., 28 Pa. 108; Larimer Ry. v. Ry., 137
Pa. 547; Reading v. Com., 11 Pa. 196.

Nor is the complainant aided by the act of June 19, 1871.
When the respondent exhibited its charter, giving it the right
to build its road, the jurisdiction of the court ceased: Western
Penna. R. R. Co.'s App., 104 Pa. 399.

The testimony shows that the real parties in interest are the
Tamaqua and Lansford Street Railway Company and the town-
ship of Rahn, all of whom should have been made parties plaintiff,
and thus vexatious suits avoided. The rule in equity requires
all parties in interest to be made parties to the proceedings in
which their interest may be affected, and if not brought in a
chancellor should dismiss the bill for want of proper parties:
Gloninger v. Hazard, 42 Pa. 389; Coal Co.'s App., 88 Pa. 499;
Lance's App., 112 Pa. 456; Phila. v. River Front R. R., 133
Pa. 134; Nat. Gas Co. v. Douglass, 130 Pa. 283; Miller's
App., 159 Pa. 573.

The complainant had no standing in court because the bill
of complaint alleged no special damage on its part and the tes-
timony did not show that it suffered any: Larimer Street R. R.
v. Larimer Ry. Co., 137 Pa. 533; Phila. & Gray's Ferry Pass.
Ry. Co.'s Appeal, 102 Pa. 123; Market Co. v. Phila. Terminal
Co., 142 Pa. 593; Junction Pass. Ry. Co. v. Williamsport Pass.
Ry. Co., 154 Pa. 116; National Docks R. R. Co. v. Central

R. R. Co., 32 N. J. Eq. 766 ; Woolen Co. v. Newton, 57 Ver
mont, 450.

OPINION BY MR. JUSTICE WILLIAMS, March 25, 1895 :

Most of the questions involved in this appeal have been con-
sidered and determined in Penna. Schuylkill Valley Railroad
Co. v. Montgomery County Street Railway Company just de-
cided.    Some questions peculiar to this case remain to be con-
· sidered and to these alone we now direct our attention.    The
first of these relates to the status of the corporation plaintiff.
The contract between the plaintiff and the township of Rahn
by which the plaintiff undertook the making and repair of all
the public roads in the township, was made under the author-
ity of the act of June 12, 1893, the constitutionality of which
has been affirmed by this court.    This contract transfers the
burden of making and repairing all the public roads in the
township, from the township and its officers, to the company ;
and it invests the company with the right to object to the
introduction or maintenance of any obstruction to the public
travel thereon which may increase the burden of repair or add
to the difficulty of suitable supervision.

The plaintiff does stand therefore in a position towards the
township of Rahn and towards the traveling public which
enables it to be heard upon the questions raised in this case in
substantially the same way as the township itself would be
entitled if it was plaintiff in the bill now before us.    The sec-
ond question is over the validity of the consent given on behalf
of the township by Coll in consideration of the agreement of
the defendant to provide employment for him during the bal-
ance of his natural life, and for his son also, at an agreed price
per day.    This agreement was not between the township and
the railway company, but between Coll as an individual and
the company, by which the company undertook to pay the
individual for his action as an officer.    The plain import of
the agreement was this : if the supervisor of Rahn township
would give consent on behalf of the township to the occupancy
of its public roads by the defendant's street railway, then the
company would pay the man who held the office the price he
demanded for his official action. The privilege bargained for
came from the township.    The price of the privilege went to

the man who held the office that enabled him to control the privilege.

We have no inclination to enter upon an argument for the purpose of proving what is perfectly obvious on a simple statement of the facts, viz : that this was a very plain case of bribing a public officer.   A consent so obtained, if otherwise valid, could confer no rights on those who bought it.   The contract which was given for it was as utterly worthless as the consent. Neither the buyer nor the seller took anything by their bargain, nor did the township, against which both seller and buyer were contriving, lose anything by the transaction.   Its consent has not been given, and cannot be obtained in the way in which the paper, called a " consent " in this case, was secured.   The last question peculiar to this case is whether the granting of an injunction " would work a practical repeal of the defendant's charter ? "   We do not see how it could work any such result. The charter authorized the building of a line of street railway through several townships and boroughs.   The general law however made the consent of the local authorities a condition precedent to the right to construct the line or circuit of railway. Before the company can rightfully insist on its right to build under its charter it must secure the consent, not of one of the boroughs or townships, but of all of them.   Without such consent it cannot build the line authorized by the charter, and it has no right to build any other.   If a line of street railway is projected to connect three adjacent districts, $a$, $b$ and $c$, and a. charter obtained describing the circuit to be built, the first thing to be done under the charter is to secure the requisite consent in each of the districts.

The borough $b$ is applied to and it gives consent to the construction of the proposed circuit, but $a$ and $c$ refuse.   What then is the situation ?   The consent of $b$ relates to the line of street railway authorized by the charter.   That cannot now be built.   The consent is therefore inoperative.   If then the company undertakes to build a local road in $b$ without a new charter and a new consent, the municipality may well object that its consent is being used for a purpose not contemplated when it was granted, and within neither its letter nor its spirit.   If the company persists, notwithstanding, in its effort to build and operate a railway within the limits of $b$ only, and the court on

application of the municipal authorities should restrain such construction by injunction, this would not work a practical repeal of the charter of the company, but restrain its action so as to keep it within the limits authorized by the charter. The trouble such companies encounter grows out of the circumstance that they consult their chartered rights less than their pecuniary interests. For these reasons as well as for those stated in The Schuylkill Valley Railroad Company v. The Montgomery County Street Railway, supra, p. 62, referred to above, the decree appealed from is now reversed.

The record is remitted to the court below, not for further hearing, but with the direction that the injunction be restored and made perpetual.